IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | No. 5:23-CR-12-CAR-CHW |
| KENYAE BROWN, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS INDICTMENT

Before the Court is Defendant Kenyae Brown's Motion to Dismiss Indictment Pursuant to the Second Amendment. For the reasons discussed below, the Court **DENIES** Defendant's Motion [Doc. 23].

## BACKGROUND

The following facts are recited only to provide background for this Order. In 2011, Defendant pled guilty to one count of Aggravated Assault on a Correctional Officer and was sentenced under Georgia's First Offender Act[1] to ten years of probation. In 2022, Defendant was arrested after fleeing from an officer who had attempted to pull him over while driving, and a pistol was found under the seat of Defendant's vehicle. Defendant

---

[1] O.C.G.A. § 42-8-60. A first offender's guilty plea does not constitute an adjudication of guilt nor a conviction. *See Sanders v. State*, 290 Ga. 445, 446 (2012); *Davis v. State*, 269 Ga. 276, 277 (1998). Because Defendant's case was effectively "suspended" during the period of probation imposed pursuant to the First Offender Act, Defendant was considered to be "under felony indictment" for the purposes of 18 U.S.C. § 922(n). *Davis v. State*, 273 Ga. 14, 15 (2000).

admits that his first offender status meant he was "under indictment" during the probationary period.[2] On March 14, 2023, the Grand Jury returned an indictment charging Defendant with Receipt of a Firearm by a Person under Felony Indictment under 18 U.S.C. § 922(n). Section 922(n) states:

> It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.[3]

Count One of the Indictment states:

> That on or about October 29, 2022, in the Macon Division of the Middle District of Georgia, the Defendant, KENYAE BROWN, who was under indictment for a crime punishable by imprisonment for a term exceeding one year, to wit: Aggravated Assault on a Corrections Officer, did knowingly receive a firearm, that is, one, (1) Taurus model: G2C, 9 caliber pistol, Serial Number: ACN732168, said firearm having been shipped and transported in interstate and foreign commerce; all in violation of Title 18, United States Code, Sections 922(n) and 924(a)(1)(D).[4]

On February 21, 2023, Defendant was adjudicated guilty of the underlying offense of Aggravated Assault on a Correctional Officer in Bibb County Superior Court Case No. 11-CR-66868 and resentenced to 20 years imprisonment minus time served on First Offender probation.[5]

---

[2] Defendant's Motion to Dismiss Indictment [Doc. 23 at 5].

[3] 18 U.S.C. § 922(n).

[4] Indictment [Doc. 1 at 1].

[5] Response to Defendant's Motion to Dismiss [Doc. 26 at 3 n.1].

After the Grand Jury indicted Defendant with Receipt of a Firearm by a Person Under Felony Indictment, Defendant was appointed counsel and pled not guilty at his arraignment. On March 31, 2023, Defendant was detained pending trial. Defendant now moves to dismiss the indictment, arguing 18 U.S.C. § 922(n) violates the Second Amendment as applied to him because it is inconsistent with the Nation's historical tradition of firearm regulation under the test described in *New York State Rifle & Pistol Ass'n v. Bruen*.[6]

## DISCUSSION

### I.    Procedural Standard

"Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial."[7]

Defendant brings an as-applied challenge to 18 U.S.C. § 922(n).[8] "In an as-applied challenge, a plaintiff seeks to vindicate only [his] own constitutional rights."[9] "In evaluating an as-applied challenge, a court 'addresses whether a statute is unconstitutional on the facts of a particular case' or in its application 'to a particular

---

[6] 142 S. Ct. 2111, 2126 (2022); *see* Doc. 23 at 1.

[7] *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010) (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)).

[8] Doc. 23 at 1; Defendant's Reply to Motion to Dismiss [Doc. 34 at 20].

[9] *McGuire v. Marshall*, 50 F.4th 986, 1003 (11th Cir. 2022) (citing *Jacobs v. Fla. Bar*, 50 F.3d 901, 906 (11th Cir. 1995)).

party.'"[10]

## II.    The Second Amendment and *Bruen*

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[11] The Supreme Court announced a two-pronged test in *New York State Rifle & Pistol Ass'n v. Bruen* to evaluate Second Amendment statutory challenges. First, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."[12] Second, if the conduct is presumptively protected, the government carries the burden to justify the regulation. "To justify its regulation, the government . . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."[13]

Defendant argues § 922(n) violates the Second Amendment as applied to him because it is inconsistent with the Nation's historical tradition of firearm regulation under the *Bruen* test;[14] as such, the indictment must be dismissed. The Government argues (1) the Second Amendment's text does not cover receiving guns while under indictment, and (2) even if the Second Amendment does cover the conduct, section 922(n) squares with

---

[10] *McGuire*, 50 F.4th at 1003 (quoting *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009)).

[11] U.S. Const. amend. II.

[12] *Bruen*, 142 S. Ct. at 2126.

[13] *Id.*

[14] *Id.*; *see* Doc. 23 at 1.

the historical tradition of firearm regulation.

The constitutionality of 18 U.S.C. § 922(n) is a matter of first impression in the Eleventh Circuit Court of Appeals.[15] In concluding that § 922(n) does not violate the Second Amendment, this Court joins the majority of courts that have heard this issue since *Bruen*.[16]

## A. Step One: The Second Amendment's Plain Text Covers Defendant's Conduct

The Government first argues the plain text of the Second Amendment does not cover Defendant's conduct because the right to keep and bear arms does not cover receiving guns.[17] Specifically, the Government argues § 922(n) does not burden the right to keep and bear arms because it "did not impair [Defendant's] ability to 'keep' any arms he had before his indictment. He simply could not 'receive' new ones during the limited

---

[15] The Eleventh Circuit has not considered the constitutionality of 18 U.S.C. § 922(n), but both the United States District Courts for the Northern District of Georgia and the Southern District of Georgia have found it does not violate the Second Amendment. *See United States v. Holder*, No. 1:23-CR-0123-SEG-JSA, 2024 WL 1012914 (N.D. Ga. Mar. 9, 2024); *United States v. Adger*, No. CR 122-102, 2023 WL 3229933 (S.D. Ga. May 3, 2023), *report and recommendation adopted*, No. CR 122-102, 2023 WL 3627840 (S.D. Ga. May 24, 2023).

[16] *See, e.g.*, *United States v. Holder*, No. 1:23-CR-0123-SEG-JSA, 2024 WL 1012914 (N.D. Ga. Mar. 9, 2024); *United States v. Adger*, No. CR 122-102, 2023 WL 3229933 (S.D. Ga. May 3, 2023), *report and recommendation adopted*, No. CR 122-102, 2023 WL 3627840 (S.D. Ga. May 24, 2023); *United States v. Rogers*, No. 5:22-CR-717, 2024 WL 692701 (N.D. Ohio Feb. 20, 2024); *United States v. Jackson*, 661 F. Supp. 3d 392 (D. Md. 2023); *United States v. Rowson*, 652 F. Supp. 3d 436 (S.D.N.Y 2023); *United States v. Kays*, 624 F. Supp. 3d 1262 (W.D. Okla. 2022); *United States v. Fabiano*, No. 2:23-CR-00001-RWS-JCF, 2023 WL 9597783 (N.D. Ga. Nov. 21, 2023); *United States v. Bartucci*, 658 F. Supp. 3d 794 (E.D. Cal. 2023); *United States v. Baker*, No. CR-23-130-G, 2024 WL 24088 (W.D. Okla. Jan. 2, 2024); *United States v. Trevino*, No. CR 2:23-cr-00066 RB, 2023 WL 8237053 (D. N.M. Nov. 28, 2023); *United States v. Posada*, 670 F. Supp. 3d 402 (W.D. Tex. 2023); *United States v. Kelly*, No. 3:22-cr-00037, 2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022).

[17] Doc. 26 at 6, 8.

time while he was under indictment."[18] The Court disagrees and joins the majority of other courts in concluding that receiving a firearm is covered conduct under the Second Amendment.[19]

The right to keep and bear arms encompasses more than simply carrying ones already owned.[20] One cannot own a firearm without first receiving it. Thus, any burden on receiving a firearm necessarily burdens one's right to keep and bear it.[21] Further, the Second Amendment covers an "individual's conduct."[22] Here, the *receipt of firearms* is the conduct—not receipt of firearms *by someone under indictment*. The fact that Defendant was under indictment goes to the second step of the *Bruen* framework, not the first. Defendant's conduct is covered by the Second Amendment. Thus, the Court proceeds to the second step in the *Bruen* test to evaluate the Government's justification for the regulation.

---

[18] Doc. 26 at 8.

[19] *See, e.g., Rogers*, 2024 WL 692701, *7 ("Though these district courts diverge on the question of § 922(n)'s constitutionality, they unanimously find that receiving a firearm is protected conduct under the Second Amendment."); *Jackson*, 661 F. Supp. 3d at 404 ("[O]f the few district courts that have specifically addressed the constitutionality of § 922(n) post-*Bruen*, they have all concluded that the plain text of the Second Amendment covers the conduct of individuals under indictment."); *Trevino*, 2023 WL 8237053, *4; *United States v. Quiroz*, 629 F. Supp. 3d 511, 516 (W.D. Tex. Sept. 19, 2022); *Rowson*, 652 F. Supp. 3d at 462.

[20] *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).

[21] *Baker*, 2024 WL 24088, *2 ("[B]ecause possession is the necessary product of receipt, Congress cannot prohibit a person from receiving a firearm without simultaneously infringing on the person's right to possess the firearm.").

[22] *Bruen*, 142 S. Ct. at 2129–30.

**B. Step Two: Section 922(n) Is Consistent with the Nation's Historical Tradition of Firearm Regulation**

To carry its burden, the Government must find founding-era historical precedent that "evinces a comparable tradition of regulation"[23] using analogical reasoning. In *Bruen*, the Supreme Court stressed that "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check."[24] Further, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical purposes, it still may be analogous enough to pass constitutional muster."[25] Although the Court rejected an analytical framework incorporating means-end scrutiny,[26] it approved two metrics to use when evaluating whether historical regulations are relevantly similar—"[1] how and [2] why the regulations burden a law-abiding citizen's right to armed self-defense."[27]

Defendant distinguishes between when *Bruen* requires historical regulations be "distinctly similar" and when they must be "relevantly similar."[28] Defendant contends that "because § 922(n) addresses a problem known to the founders, the government must prove a 'distinctly similar' tradition of firearms regulation," and the Government fails to

---

[23] *Bruen*, 142 S. Ct. at 2131–32.

[24] *Id.* at 2133.

[25] *Id.*

[26] *Id.* at 2126.

[27] *Id.* at 2133.

[28] Doc. 34 at 8–9.

do so.[29] The Court disagrees.

"*Bruen*'s history inquiry does not split neatly into (1) a 'straightforward' approach for statutes 'address[ing] a general societal problem that has persisted since the 18th century,' which always requires a 'distinctly similar' historical regulation; and (2) 'a more nuanced approach' for laws addressing 'unprecedented societal concerns,' which calls for analogical reasoning."[30] Nor did the Supreme Court "rule that 'the lack of a distinctly similar historical regulation' is dispositive for laws addressing a persistent problem; rather, only that it 'is relevant evidence.'"[31] "Otherwise, some restrictions that the Founders would have 'believed to be permissible' would fail just because they 'happened [not] to exist in the founding era.'"[32] Thus, the Government need only present "relevantly similar" historical analogues to carry its burden, not "distinctly similar" ones.

## 1. The Government's Historical Analogues

The Government emphasizes that although the Second Amendment protects "'the right of law-abiding, responsible citizens to use arms' for self-defense,"[33] the United States's historical tradition "embraces restricting the gun rights of citizens viewed by legislatures as unvirtuous or dangerous."[34] To support this proposition, the Government

---

[29] *Id.* at 9; *see Bruen*, 142 S. Ct. at 2131, 2132.

[30] *Jackson*, 661 F. Supp. 3d at 408 (quoting *Bruen*, 142 S. Ct. at 2131–32).

[31] *Id.* (quoting *Bruen*, 142 S. Ct. at 2131).

[32] *Id.* (quoting *Kelly*, 2022 WL 17336578, *2).

[33] *Bruen*, 142 S. Ct. at 2131 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).

[34] Doc. 26 at 10.

8

cites a number of historical analogues.[35] Of those cited, the Court finds the surety statute is the most relevantly similar to § 922(n), and § 922's legislative history is helpful.

The surety statute originated in England and "required certain individuals to post bond before carrying weapons in public."[36] Ten jurisdictions adopted surety statutes between 1838 and 1871 in the United States, which mirrored earlier colonial statutes.[37] These bans "typically targeted only those threatening to do harm."[38] For example, the Massachusetts law, variants of which were adopted by the other states, "required any person who was reasonably likely to 'breach the peace,' and who, standing accused, could not prove a special need for self-defense, to post a bond before publicly carrying a firearm."[39] These statutes "*presumed* that individuals had a right to public carry that could be burdened only if another could make out a specific showing of 'reasonable cause to fear an injury, or breach of the peace.'"[40]

The Government argues § 922(n) "reflects a permissible legislative judgment that felony indictees are among the potentially dangerous or unvirtuous citizens whose gun

---

[35] The Government discusses other historical analogues which the Court found were not sufficiently similar to justify the regulation, including: the Milita Act of 1662, the Statute of Northampton, statutes requiring an oath of allegiance, an address containing reasons of dissent from the Pennsylvania Constitutional Convention, a treatise by Thomas M. Cooley, § 922's legislative history, federal pretrial release restrictions as authorized in 18 U.S.C. § 3142(c)(1)(B)(viii), and shall-issue firearm licensing regimes employed by 43 states.

[36] *Bruen*, 142 S. Ct. at 2148.

[37] *Id.* at 2144, 2148.

[38] *Id.* at 2148.

[39] *Id.*

[40] *Id.* (quoting Mass. Rev. Stat., ch. 134, § 16 (1836)).

rights the government may restrict."[41] It bases this argument on the Act's legislative history, which reflects a "concern with keeping firearms out of the hands of categories of potentially irresponsible persons."[42] The Supreme Court explained that § 922's "broadly stated principal purpose was 'to make it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'"[43] The Government also compares the "historical pedigree and duration" of § 922(n) to § 922(g)(1), which prohibits felons from possession firearms.[44] It argues that *Heller* expressly endorsed the felon-in-possession statute, which the Court called "longstanding,"[45] because it was "*analogous enough* to historical regulations."[46]

### 2. Analysis

The Court finds the Government has carried its burden of identifying historical analogues that demonstrate a "comparable tradition of regulation"[47] to the challenged law. The surety statutes are the most relevant analogue identified, and numerous other district courts have relied on them in upholding § 922(n).[48] The Court in *Bruen* did not

---

[41] Doc. 26 at 15.

[42] *Barrett v. United States*, 423 U.S. 212, 220 (1976).

[43] *Id.* at 220 (quoting S. Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968)).

[44] Doc. 26 at 16.

[45] *Heller*, 554 U.S. at 626.

[46] Doc. 26 at 16.

[47] *Bruen*, 142 S. Ct. at 2131–32.

[48] *See, e.g., United States v. Rogers*, No. 5:22-CR-717, 2024 WL 692701, *8 (N.D. Ohio Feb. 20, 2024); *United States v. Jackson*, 661 F. Supp. 3d 392, 414 (D. Md. 2023); *United States v. Adger*, No. CR 122-102, 2023 WL 3229933, *4 (S.D. Ga. May 3, 2023), *report and recommendation adopted*, No. CR 122-102, 2023 WL 3627840 (S.D. Ga. May 24, 2023); *United States v. Rowson*, 652 F. Supp. 3d 436, 469 (S.D.N.Y 2023); *United States v.*

find them to be a relevant historical analogue, but the challenged statute in *Bruen* banned all public carry of firearms unless a "demanding" special-need standard was met;[49] section 922(n), in contrast, is a more narrow restriction on a limited subset of the population. Although the surety statutes are not a historical twin to § 922(n), they recognize that government officials in the founding era could legally restrict a person's right to keep and bear arms on the basis of an accusation of actual or threatened criminal conduct.[50]

Under *Bruen*'s metrics of "how and why the regulation[] burden[s] a law-abiding citizen's right to armed self-defense," § 922(n) is relevantly similar to the surety statutes.

"How" § 922(n) regulates gun rights is comparable to how historical surety statutes restricted them. The Massachusetts statute, for example, based its restriction "on [the] complaint of any person having reasonable cause to fear an injury, or breach of the peace."[51] Likewise, a prerequisite for § 922(n) to apply is an indictment by a grand jury that establishes probable cause to believe the person has committed a felony offense. Although § 922(n) categorically bans all people under felony indictment from receiving firearms, an individualized determination is made by a grand jury as to probable cause before indictment for felony criminal conduct. Further, the scope of § 922(n) is "unusually

---

[49] *Kays*, 624 F. Supp. 3d 1262, 1268 (W.D. Okla. 2022); *United States v. Fabiano*, No. 2:23-CR-00001-RWS-JCF, 2023 WL 9597783, *9 (N.D. Ga. Nov. 21, 2023).

[49] *Bruen*, 142 S. Ct. at 2123.

[50] *United States v. Baker*, No. CR-23-130-G, 2024 WL 24088, at *5 (W.D. Okla. Jan. 2, 2024).

[51] *Bruen*, 142 S. Ct. at 2148.

narrow" because it only bars the shipping, transport, and receipt of firearms.[52] The indictee is permitted to possess any weapons lawfully obtained prior to indictment. Further, both § 922(n) and surety statutes restrict an individual's gun rights for a finite period of time.

"Why" § 922(n) regulates gun rights is also comparable to that of the surety statutes. Both surety laws and § 922(n) "allow such restrictions for the purpose of public safety."[53] When there is probable cause to believe a person has committed a felony, "there is sufficient cause to fear the illegal use of a firearm if, while the charge is pending, the accused person . . . receives a firearm in interstate commerce."[54] Likewise, "[t]he continued use of surety laws from pre-Founding through post-Founding confirms that Americans were concerned about arming individuals believed to have dangerous inclinations."[55] "[S]urety laws disarmed a person only when 'attended with circumstances giving reason to fear that' an accused person intends 'to make an unlawful use of' firearms."[56] Surety statutes' concern with individuals who had alleged "dangerous inclinations"[57] is relevantly similar to § 922(n)'s concern with "potentially irresponsible persons."[58] Thus, the surety statutes are a relevantly similar historical analogue that

---

[52] *Adger*, 2023 WL 3229933, *5.

[53] *Jackson*, 661 F. Supp. 3d at 414; *see also Rogers*, 2024 WL 692701, *9; *Adger*, 2023 WL 3229933, *4.

[54] *Adger*, 2023 WL 3229933, *4.

[55] *Rogers*, 2024 WL 692701, *9.

[56] *Id.* (quoting *Bruen*, 142 S. Ct. at 2148).

[57] *Rogers*, 2024 WL 692701, *9.

[58] *Barrett*, 423 U.S. at 220.

support § 922(n)'s constitutionality.

Although the Eleventh Circuit has not considered the constitutionality of § 922(n), in *United States v. Dubois* the Court recently refused to reconsider the constitutionality of § 922(g)(1)'s felon-in-possession ban.[59] The *Dubois* decision was based on the Eleventh Circuit's ruling in *Rozier* that "felons are categorically 'disqualified' from exercising their Second Amendment right under *Heller*."[60] Defendant argues that the Supreme Court's suggestion that the felon-in-possession is "longstanding" was dicta.[61] But in *Dubois*, the Eleventh Circuit reiterated that the statement is not dicta because "[*Heller*] limited the Second Amendment right to '*law-abiding* and *qualified* individuals.'"[62] Based on these decisions, the Eleventh Circuit clearly states that the felon-in-possession ban is "a presumptively lawful longstanding tradition."[63] The first federal statute restricting the Second Amendment rights of both felons *and* those under indictment was enacted in 1938.[64] Thus, if § 922(g)(1) is sufficiently longstanding to pass constitutional muster, it stands to reason that § 922(n) is too.

---

[59] *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024); 18 U.S.C. § 922(g)(1).

[60] *Dubois*, 94 F.4th at 1293 (quoting *United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir. 2010)).

[61] *Heller*, 554 U.S. at 626; Doc. 34 at 5.

[62] *Dubois*, 94 F.4th at 1292 (quoting *Rozier*, 598 F.3d at 771 n.6 (11th Cir. 2010)).

[63] *Id.* (quoting *Rozier*, 598 F.3d at 771).

[64] *See United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010); *United States v. Laurent*, 861 F. Supp. 2d 71, 82 (E.D. N.Y. 2011); Federal Firearms Act of 1938, 75 Cong. Ch. 850, §§ 2(e)–(f), 52 Stat. 1250, 1251.

### III.    Sufficiency of the Evidence

To the extent Defendant argues his indictment must be dismissed because the Government fails to provide sufficient evidence to prove its case,[65] his argument fails. Federal Rule of Criminal Procedure 12 does not "provide a basis for granting a pre-trial motion to dismiss a criminal indictment,"[66] so "a defendant cannot challenge whether there is a sufficient evidentiary foundation to support the grand jury's probable cause determination."[67] Moreover, the indictment need not "allege in detail the factual proof that will be relied upon to support the charges."[68]

### IV.    Conclusion

The Government has carried its burden of establishing 18 U.S.C. § 922(n) is consistent with this Nation's historical tradition of firearm regulation, and the Court finds § 922(n) is constitutional. Therefore, the Court **DENIES** Defendant's Motion to Dismiss Indictment Pursuant to the Second Amendment [Doc. 23].

**SO ORDERED,** this 24th day of April, 2024.

s/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[65] Doc. 23 at 2 n.1.

[66] *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004).

[67] *United States v. Kaley*, 677 F.3d 1316, 1326 (11th Cir. 2012).

[68] *United States v. Sharpe*, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006) (quoting *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978)).